IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MLC AUTOMOTIVE, LLC; and ) | | |
| LEITH OF FAYETTEVILLE, INC., ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| ) | | |
| TOWN OF SOUTHERN PINES; the ) | 1:05cv1078 | |
| SOUTHERN PINES TOWN COUNCIL; ) | | |
| and FRANK QUIS, DAVID WOODRUFF, ) | **ORDER** | |
| FRED WALDEN, CHRISTOPHER ) | | |
| SMITHSON and MIKE HANEY, ) | | |
| ) | | |
| Defendants. ) | | |

This matter is before the court on two discovery motions by Defendants: First, Defendants' motion to compel production of Documents 21, 24, 25, 26, 27, 29-34, 36, 39, 40, and 43 in Plaintiffs' privilege log (docket no. 28), and second, Defendants' motion for a protective order (docket no. 30) prohibiting Plaintiffs from taking the depositions of Defendant town council members and prohibiting Plaintiffs from discovery of privileged communications between attorney Doug Gill and the Town of Southern Pines, including the town council members. Furthermore, since the filing of the respective motions, the parties have filed a joint motion to amend the discovery plan (docket no. 36), which has also been referred to the undersigned.

Background

This case involves a challenge to the Town of Southern Pines and its town council members over a rezoning decision that has resulted in preventing Plaintiffs

from developing certain property for commercial use.  Plaintiffs MLC Automotive, LLC and Leith of Fayetteville, Inc. (collectively "Plaintiffs") filed this lawsuit against the Town of Southern Pines and members of the Town Council (collectively "Defendants").  Plaintiff allege, among other things, that Defendants violated Plaintiffs' federal due process rights when they unlawfully and arbitrarily rezoned Leith's property long after the Town became aware of Leith's plans to develop the property to be used as an Auto Park, and long after Leith had made substantial expenditures in furtherance of the development.  According to Plaintiffs, Defendants intentionally delayed the permit approval process so that they could rezone the property before Plaintiffs could obtain all of the necessary permits to begin construction of the Auto Park.  For instance, Plaintiffs allege that Defendants intentionally stalled in considering an Architectural Compliance Permit application and wrongly told Plaintiffs that the Architectural Compliance Permit had to be approved before any other building or zoning permit applications could be processed.  The disputed discovery issues on Defendants' motions here relate to Defendants' theory that it was Plaintiffs' own conduct that prevented Plaintiffs from obtaining a zoning and/or building permit before Defendants rezoned the property to prohibit Plaintiffs from building the Auto Park.

Discussion

I. Motion to Compel Discovery of Engineer William Daniel's Communications with Plaintiffs' Counsel

2

Defendants have filed a motion to compel discovery of certain e-mail communications between engineer William Daniel and Plaintiffs' counsel. More specifically, Defendants contend that they are entitled to disclosure of communications between Plaintiffs' attorneys and Daniel contained in Documents 21, 24, 25, 26, 27, 29-34, 36, 39, 40, and 43 of Plaintiffs' privilege log. Defendants argue that this information is relevant to whether Plaintiffs' own delay, rather than Defendants' actions, prevented Plaintiffs from securing a zoning/building permit before the rezoning of Plaintiffs' property.[1] In response, Plaintiffs contend that with the exception of Documents 39, 40, and 43, which relate to litigation of this case and which Plaintiffs contend are protected by the work product doctrine, the identified communications are protected by the attorney-client privilege because they were made for the purpose of providing information to Plaintiffs' attorneys so that they could render informed legal advice to Plaintiffs or for receiving information from Plaintiffs' attorneys so that Daniel could implement the attorneys' legal advice. (Daniel Aff. ¶ 8.)

Before delving into the parties' respective arguments, it is important to understand the role that engineer William Daniel played in this controversy. In Fall

---

[1] Defendants contend that the communications are, therefore, relevant to Plaintiffs' potential argument that Defendants are estopped from arguing that Plaintiffs did not acquire vested rights in developing the Auto Park property because it was Defendants' own actions that prevented Plaintiffs from obtaining the permits necessary for their rights to vest. *See, e.g., Molamphy v. Town of Southern Pines*, No. 1:02cv720, 2004 WL 419789 (M.D.N.C. Mar. 3, 2004) (discussing the various ways in which a party may obtain a vested right to develop property in North Carolina). Plaintiffs have not contested disclosure of the communications based on relevancy.

2004, Plaintiff Leith hired Daniel to perform site design and evaluation services with regard to development of the 21-acre parcel where Plaintiffs planned to develop the Auto Park. (*See* Daniel Aff., attached to Pls.' Br. In Response to Defs.' Motion for Protective Order, ¶ 4.) These services included preliminary investigation of regulatory requirements and issues pertaining to the property, as well as development of schematic and detailed engineering plans for automobile dealerships to be located on the property. *(Id.)* Leith relied on Daniel to investigate and address regulatory requirements applicable to the property from a planning and design perspective, including the requirements of the Southern Pines Unified Development Ordinance ("UDO"). (*Id.* ¶ 5.) Leith maintains that it hired Daniel to perform this specialized role on its behalf, and that no officer, employee, or other agent of Leith was charged with this responsibility regarding the property, with the limited exception of the architect hired by Leith, who investigated and addressed architectural requirements for the automobile dealerships to be located on the property. According to Plaintiffs, as a representative and agent of Leith, Daniel communicated and met with Southern Pines officials and staff regarding the requirements of the Southern Pines UDO as applied to the property and approval of plans for the property. *(Id.)* Daniel informed Southern Pines officials and staff that he was a representative of Leith and interacted with them accordingly. (*Id.* ¶ 5.) According to Plaintiffs, Leith in turn relied on Daniel's site design and evaluation services in making key decisions regarding development of the property. *(Id.* ¶ 7.) As part of

4

his work for Leith, Daniel communicated directly with Leith's attorneys regarding the property and Leith's efforts to develop the Auto Park on the property. *(Id.* ¶ 8.) According to Plaintiffs, Daniel was the primary source of information for Leith's attorneys regarding his evaluation of the property and his interactions with Southern Pines officials and staff pertaining to regulatory requirements applicable to the property and approval of plans. Plaintiffs maintain that the communications between Daniel and Leith's attorneys were viewed and treated by all parties as confidential; that the communications were not shared with anyone other than individuals working with Leith regarding the property who had a need to know the contents; and Leith has not waived the attorney-client privilege with regard to those identified communications. Plaintiffs contend, therefore, that the identified communications clearly fall within the scope of the attorney-client privilege and Leith should not be required to produce them.

The Fourth Circuit has adopted the following test for determining the existence of attorney-client privilege:

> "The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir. 1998). The attorney-client privilege

is intended to encourage those who find themselves in actual or potential legal disputes to be candid with lawyers who advise them, and it is one of the oldest recognized privileges for confidential communications. *See Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981); *Hunt v. Blackburn,* 128 U.S. 464, 470 (1888). When the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure. *See Trammel v. United States,* 445 U.S. 40, 50 (1980); *In re Grand Jury Subpoena,* 204 F.3d 516, 519-20 (4th Cir. 2000). The protection applies to communications between a corporate party and its in-house counsel, as well as to communications with a privately retained attorney. *See Upjohn,* 449 U.S. at 389-90. Moreover, the privilege extends not only to documents authored by an attorney but also to information and queries submitted to him by his client. *Id.* at 390 (explaining that the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice"); *see also In re Allen,* 106 F.3d 582, 601 (4th Cir. 1997) (applying *Upjohn*).

Finally, some courts have recognized that, in certain situations, an agent of the client who plays an integral part in communicating with an attorney on the client's behalf is also entitled to the attorney-client privilege. For instance, in *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994), the Eighth Circuit addressed whether communications between a consultant and a partnership's attorney fell within the scope of the attorney-client privilege. The consultant had been hired to develop a

6

piece of property and subsequently became involved in the litigation that resulted from the failure to develop the property. *Id.* at 933. The court held that the communications at issue between the consultant as an independent contractor hired by the partnership and that partnership's counsel were protected by the attorney-client privilege. *Id.* at 939-40. *Accord In re Grand Jury Proceedings,* 947 F.2d 1188, 1191 (4th Cir. 1991) (stating that the communications between client's accountant and attorney for purpose of assisting client in rendition of legal services were protected); *FTC v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002) (holding that consultants who were "integral members of the team assigned to deal with issues [that] . . . were completely intertwined with [the client's] litigation and legal strategies" fell within the scope of the attorney-client privilege); *Neighborhood Dev. Collaborative v. Murphy*, 233 F.R.D. 436, 441 (D. Md. 2005) (stating that confidential communications between a client and its attorney, which were conducted through a third-party financial consultant for the purpose of obtaining legal advice, were protected).

Here, Plaintiffs contend that the disputed documents in Plaintiffs' privilege log between Daniel and Plaintiffs' attorneys are covered by the attorney-client privilege because, under the reasoning of *In re Bieter*, Plaintiffs relied on Daniel to investigate and address regulatory requirements applicable to the property and Daniel played an integral part in the process of trying to get the land developed. Defendants contend, on the other hand, that Daniel's role was merely that of a construction

7

engineer working on numerous other projects, for other clients, throughout the course of the Leith project. Defendants note that Daniel testified in his deposition that he spent about one-quarter of his time on the Leith project. (Vol. I., Daniel Dep. pp. 6-17, 124, Ex A.) Defendants further observe that Daniel has not appeared at depositions in this case alongside Plaintiffs' counsel, and Plaintiffs have admitted that he is not acting as a litigation consultant to Plaintiffs. (Vol. II, Daniel Dep. pp. 225-26, Ex. B.) Defendants maintain that Daniel is, therefore, unlike the contractor in *In re Bieter* and that Daniel's role was more akin to that of an ordinary third-party specialist, disclosure to whom destroys the attorney-client privilege. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409, M 21-95, 2003 WL 22389169, at *3 (S.D.N.Y. Oct. 21, 2003) (refusing to apply the attorney-client privilege to communications between the attorney and a third party that was not the client's employee); *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (holding that extension of attorney-client privilege to public relations firm hired by company would "broaden the privilege well beyond prevailing parameters," where the firm did "not appear to have been performing functions materially different from those that any ordinary public relations firm would have performed if they had been hired directly by [the company]").

After an *in camera* review of the disputed communications between Daniel and Leith's attorneys, the court finds that the communications in Documents 21, 24, 25, 26, 27, 29-34, 36, 39, and 43 of Leith's privilege log are protected by the

8

attorney-client privilege and may not be discovered.[2] These were all communications from Daniel to Leith's attorneys while Daniel was acting as Leith's agent in providing the attorneys with information necessary for the various permits. Daniel played an integral part in supplying to Leith's attorneys information necessary for processing the various applications and permits for developing the Auto Park. Thus, the role of Daniel in this case is akin to the roles of other independent contractors in the *In re Bieter* line of cases, which hold that for the same reasons that communications of corporate officers and employees are protected by the attorney-client privilege, so are communications of a corporation's third-party consultants where the communications are made to facilitate or assist in the rendition of legal services, or to provide the consultants legal advice and strategies formulated by counsel so that the consultant can carry out related tasks on behalf of the client. *Accord DE Techs., Inc v. Dell, Inc.*, No. 7:04CV628, 2006 WL 2548203, at *2 (W.D. Va. Sept. 1, 2006). (discussing *In re Bieter* and stating that "[t]he court does not read the Fourth Circuit cases to require the existence of an employment relationship in order to support invocation of attorney-client privilege in appropriate cases involving confidential communications with third parties"). The court observes that the only document that does not appear to be covered by the attorney-client privilege is Document 40. This document is an e-mail from Daniel to one of Leith's

---

[2] Moreover, Documents 39, 40, and 43 are protected by the work product doctrine because they were made in preparation of this litigation. *See* FED. R. CIV. P. 26(b)(3).

employees regarding Defendants' Interrogatories. Since this is not a communication between Daniel and Leith's attorneys, this document cannot fall under the attorney-client privilege. The document, however, consists of notes from Daniel to the Leith employee regarding Defendants' various Interrogatories propounded to Plaintiffs during this litigation. These notes were clearly made in preparation of trial and are, thus, not discoverable. *See In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001) (stating that once it is established that a document was prepared in anticipation of litigation, work product immunity protects documents prepared by or for a representative of a party, including its agent). For all these reasons, Defendants' motion to compel disclosure of Documents 21, 24, 25, 26, 27, 29-34, 36, 39, 40, and 43 of Plaintiffs' privilege log is denied.

## II. Motion for Protective Order by Defendants to Prohibit Deposition Testimony of the Members of the Southern Pines Town Council

On October 19, 2006, Plaintiffs noticed the depositions of town council members Frank Quis, David Woodruff, Christopher Smithson, Fred Walden, and Mike Haney. Defendants contend that the court should prohibit these depositions from being conducted because Defendants are afforded a testimonial privilege that attaches to legislative and quasi-judicial functions. When seeking a protective order pursuant to FED. R. CIV. P. 26(c), the moving party must show good cause by presenting specific facts in support of the request as opposed to conclusory or speculative statements. *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 385-

10

86 (M.D.N.C. 2003); *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 412 (M.D.N.C. 1991). For the following reasons, the court finds that Defendants have shown that good cause exists for the court to issue a protective order because the Southern Pines Town Council members are protected from testifying by legislative and quasi-judicial immunity.

It is well settled that members of local governmental bodies are entitled to absolute legislative immunity from claims against them arising out of their actions taken in a legislative capacity. *Roberson v. Mullins*, 29 F.3d 132, 134 (4th Cir. 1994); *see also Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980). The actions of proposing, discussing, and voting on proposed legislation such as amendments to zoning ordinances fall within the ambit of legislative capacity. *See, e.g., Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 865 F.2d 77, 79 (4th Cir. 1989). In addition, members of local governmental bodies are entitled to quasi-judicial immunity for actions taken in the exercise of their judicial discretion. *See Hyatt v. Town of Lake Lure,* 225 F. Supp. 2d 647 (W.D.N.C. 2002). Legislative immunity, as well as quasi-judicial immunity, shields the individual from the consequences of the litigation results and provides a testimonial privilege. *See Schlitz v. Virginia*, 854 F.2d 43, 46 (4th Cir. 1988) (stating that "[t]he purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves").

In support of the motion for protective order, Defendants contend that they are

11

protected from having their depositions taken by legislative immunity as well as quasi-judicial immunity. In response, Plaintiffs acknowledge that there is a testimonial privilege that protects the council members from testifying to certain matters relating to the rezoning and their motives for voting as they did. Plaintiffs point out, however, that the immunity is not absolute and, instead, only acts as a shield when members act in a legislative capacity, and that administrative or executive types of action are not afforded full protection. *Roberson*, 29 F.3d at 134. Plaintiffs have agreed not to inquire from council members as to their motives and purpose for rezoning the Leith property. Plaintiffs argue, however, that the council members were involved in the Leith project in many capacities, not just in a legislative one, and that they were likewise involved with the issues raised in this case for a long period of time before the rezoning petition was filed. Leith contends that the following topics are outside the council members' legislative testimonial privilege: (1) the decision relating to the application for the Architectural Compliance Permit; (2) e-mail communications to and from the council members relating to methods to stop Leith from developing the property other than by rezoning; (3) communications with constituents about whether a rezoning application should be filed to begin with; and (4) discussions with constituents and others about the Town acquiring the property by eminent domain.[3] In sum, Plaintiffs contend that rather

---

[3] Plaintiffs also point out that in an earlier case filed against the Town of Southern Pines and Mayor and town council member Quis, who is named as a defendant in this case, relating to the rezoning of property to prohibit a project in the

than exempting Defendants from being deposed, they should be required to appear and that to the extent their attorney believes the questioning is improper, an objection may be made and dealt with by the court at a later date.

The court will grant Defendants' motion for a protective order barring Plaintiffs from taking the town council members' depositions. As Defendants note, if Plaintiffs are allowed to depose Defendants concerning the lines of questioning sought by Plaintiffs, then the testimonial privilege will effectively be eviscerated. Moreover, Plaintiffs' proposed lines of questioning are not relevant unless they bear on Defendants' motives or intentions with respect to Plaintiffs' rezoning; thus, the proposed lines of questioning concern *either* irrelevant or privileged information. Allowing depositions of council members on certain "administrative," but not "legislative" matters would no doubt further embroil the parties in tit-for-tat arguments during the depositions regarding what testimony is permissible. Finally, Plaintiffs have not shown that they are unable to ascertain relevant, objective facts from sources other than by taking the council members' depositions. In sum, changing the zoning on the property to prohibit construction of the Auto Park was clearly legislative, and the council members, therefore, enjoy immunity from having to testify

---

same zoning district, Quis did not claim immunity and chose to testify by deposition. Plaintiffs suggest that the fact that Mayor Quis testified by deposition in that case affects whether the town council members may assert immunity in this case. The fact that Mayor Quis did not claim testimonial immunity in the other case has no relevancy to whether the town council members may assert such immunity here.

13

about their decision to rezone.

The court finds, furthermore, that the testimonial immunity exists with regard to the Architectural Compliance Permit application because considering the application was a quasi-judicial proceeding, regardless of whether the town council followed the procedures for such proceedings. Plaintiffs contend that this topic is not barred by legislative immunity as a quasi-judicial matter because the council never treated the Architectural Compliance Permit application as a quasi-judicial matter. Plaintiffs point out, for instance, that in reviewing the application the town council did not employ any of the procedures that it normally applies when addressing quasi-judicial matters. Plaintiffs contend that, regardless of whether the town council *should* have followed quasi-judicial procedures, having failed to actually act in a quasi-judicial manner, the council members cannot now claim the protections of the testimonial immunity.

In response, Defendants concede that the town council members, in reviewing the Architectural Compliance Permit application, did not apply the procedures typically applied in quasi-judicial proceedings. Defendants maintain, however, that this fact does not deprive them of claiming quasi-judicial immunity, as "it is the *nature of the decision* that defines a quasi-judicial function, not the *procedures* that were or were not invoked." (Defs.' Br. at 7). The court agrees. A quasi-judicial actor enjoys immunity for the actor's judicial acts even if the exercise of authority is flawed by the commission of grave procedural errors. *Killinger v. Johnson*, 389 F.3d 765, 770 (7th

14

Cir. 2004) (citing *Stump v. Sparkman*, 435 U.S. 349 (1978)). Here, regardless of whether the town council members applied the proper procedures in reviewing the Architectural Compliance Permit application, they are still entitled to testimonial immunity by virtue of their quasi-judicial functions. The court will therefore grant Defendants' motion for a protective order preventing Plaintiffs from taking the town council member's depositions.

III. Motion for Protective Order by Defendants to Protect Communications Between Southern Pines Officials and Their Attorneys

Plaintiffs seek the disclosure in this case of communications between the Town of Southern Pines and its attorney Doug Gill under the theory that these communications are public records within the meaning of North Carolina's Public Records Law. In their motion for a protective order, Defendants contend that Plaintiffs are prevented, under the Public Records Law's attorney-client privilege exemption set forth in N.C. GEN. STAT. § 132-1.1(a), from discovering any correspondence between attorney Doug Gill and the Town of Southern Pines and its employees or agents. The North Carolina Public Records Act, N.C. GEN. STAT. § 132-1(b) et seq., gives the public the right to access records compiled by government agencies. *See News & Observer Publ'g Co. v. Poole,* 330 N.C. 465, 475, 412 S.E.2d 7, 13 (1992) (stating that "'the legislature intended to provide that, as a general rule, the public would have liberal access to public records'"). "The Public Records Act permits public access to all public records in an agency's

15

possession 'unless either the agency or the record is specifically exempted from the statute's mandate.'" *Gannett Pac. Corp. v. North Carolina State Bureau of Investigation*, 164 N.C. App. 154, 156, 595 S.E.2d 162, 164 (2004) (citing *Times-News Publ'g Co. v. North Carolina,* 124 N.C. App. 175, 177, 476 S.E.2d 450, 452 (1996)). The Act, in N.C. GEN. STAT. § 132-1.1(a), specifically retains an attorney-client privilege for public records, as follows:

> (a) Confidential Communications. - Public records, as defined in G.S. 132-1, shall not include written communications (and copies thereof) to any public board, council, commission or other governmental body of the State or of any county, municipality or other political subdivision or unit of government, made within the scope of the attorney-client relationship by any attorney-at-law serving any such governmental body, concerning any claim against or on behalf of the governmental body or the governmental entity for which such body acts, or concerning the prosecution, defense, settlement or litigation of any judicial action, or any administrative or other type of proceeding to which the governmental body is a party or by which it is or may be directly affected. Such written communication and copies thereof shall not be open to public inspection, examination or copying unless specifically made public by the governmental body receiving such written communications; provided, however, that such written communications and copies thereof shall become public records as defined in G.S. 132-1 three years from the date such communication was received by such public board, council, commission or other governmental body.

The North Carolina Supreme Court has indicated that the statutory protection for privileged information under section 132-1.1(a) is more narrow than the traditional common law attorney-client privilege. *News & Observer Pub. Co. v. Poole*, 330 N.C. 465, 412 S.E.2d 7 (1992). That is, the attorney-client privilege under section 132-1.1(a) protects only those communications "concerning any claim against or on

16

behalf of the governmental body or the governmental entity for which such body acts, or concerning the prosecution, defense, settlement or litigation of any judicial action, or any administrative *or other type of proceeding to which the governmental body is a party or by which it is or may be directly affected,*" and it protects communications flowing from the attorney to the client, not the communications flowing from the client to the attorney. *See McCormick v. Hanson Aggregates Southeast, Inc.*, 164 N.C. App. 459, 469, 596 S.E.2d 431, 437 (2004) ("As reiterated by our Supreme Court in *Poole*, the statutory protection for privileged information is more narrow than the traditional common law attorney-client privilege."). Finally, the privileged communications are protected for only three years, after which they become public records.

The court agrees with Plaintiffs that the plain language of section 132-1.1(a) makes clear that the only communications that are protected are those made by the attorney to the governmental body. As such, all relevant communications from the Town of Southern Pines and its employees and agents to the Town's attorney are not included in this exemption, and therefore are public records which must be disclosed under North Carolina's Public Records Law. Communications from the Town's attorney to the Town, including those regarding the Architectural Compliance Permit application and/or the zoning issue, however, are protected because these communications were regarding "any administrative or other type of proceeding to which the governmental body is a party or by which it is or may be directly affected."

17

In sum, Defendants' motion for a protective order as to certain communications between the Town and its employees and agents and the Town's attorneys is granted in part and denied in part. Defendants must disclose to Plaintiffs relevant communications flowing from the Town and its employees and agents to the Town's attorney, regardless of whether the communications involved the Architectural Compliance Permit application or the zoning issue.

Conclusion

**IT IS THEREFORE ORDERED** that Defendants' motion to compel production of documents Nos. 21, 24, 25, 26, 27, 29-34, 36, 39, 40, and 43 in Plaintiffs' privilege log (docket no. 28) is **DENIED**. Furthermore, Defendants' motion for protective order (docket no. 30) as to certain communications between the Town of Southern Pines and its employees/agents and the town's attorneys is **GRANTED IN PART** and **DENIED IN PART**. That is, Defendants must disclose communications from the Town of Southern Pines and its employees/agents to the Town's attorney, but Defendants are not required to disclose communications from the attorney to the Town of Southern Pines and its employees/agents, as these communications are protected as an exemption to the Public Records Law under N.C. GEN. STAT. § 132-1.1. That part of Defendants' motion for a protective order which seeks to prevent Plaintiffs from taking the town council members' depositions is **GRANTED**. The parties' respective motions for attorney's fees are **DENIED**.

Finally, the court notes that the parties have filed a joint motion to amend their

discovery plan (docket no. 36), in which the parties seek to extend the current deadlines for completion of mediation and discovery. The parties' motion to amend the discovery plan is **GRANTED**, to the extent that the parties shall have 15 days following the date of entry of this Order in which to complete discovery.[4] The parties shall have an additional 30 days from entry of this Order in which to participate in a mediated settlement conference. Finally, the parties shall have 30 days following the close of the discovery period in which to file dispositive motions. So as to allow the court sufficient time to rule on any dispositive motions before the scheduled trial date of the week of July 9, 2007, the regular time for response and reply briefs shall be condensed in that responsive briefs shall be filed within 10 days of the initial briefs on the motions, and reply briefs shall be filed within 5 days of responsive briefs.

**IT IS SO ORDERED.**

_____
Wallace W. Dixon
United States Magistrate Judge

January 11, 2007

---

[4] Pursuant to Local Rule 56.1, the parties shall have 10 days from the close of the discovery period in which to file notices of intent to file dispositive motions.

19