IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MLC AUTOMOTIVE, LLC; and LEITH OF FAYETTEVILLE, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:05CV01078 |
| TOWN OF SOUTHERN PINES; the SOUTHERN PINES TOWN COUNCIL; and FRANK QUIS, DAVID WOODRUFF, FRED WALDEN, CHRISTOPHER SMITHSON and MIKE HANEY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

MEMORANDUM OPINION

TILLEY, District Judge

This case arises out of a zoning dispute between Plaintiffs MLC Automotive, LLC and Leith of Fayetteville, Inc. (collectively, "Leith") and Defendants the Town of Southern Pines, the Southern Pines Town Council, and the individual members of the town council (collectively, the "Town"). The matter is now before the Court on the Town's Verified Motion for Relief from Order Staying Case pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. [Doc. # 83.] For the reasons set forth below, the Town's motion for relief will be DENIED.

I.

The facts of this case, which are presented in further detail in the May 15, 2005 Order and Recommendation of United States Magistrate Judge [Doc. # 74],

are as follows. Leith is in the business of developing and operating automobile dealerships. In 2000, Leith became interested in developing an automobile park in Southern Pines. An automobile park consists of multiple automobile dealerships located at a single location or site.

In March 2001, Leith entered into a contract to purchase twenty-one acres of land fronting Highway 1 in the Town's Urban Transition Highway Corridor Overlay District (the "Property"). Before purchasing the Property, Leith obtained several written determinations from the Town confirming that the Property was zoned as General Business ("GB"), which allows for the development and operation of an automobile park. In reliance on the GB zoning and reassurances by the Town, Leith closed on the Property in January 2002 for $1,553,904. Leith began site work on the Property in December 2004. In January 2005, Leith entered into a valid and binding letter of intent with Suzuki Motor Corporation, which gave Leith a contractual right to hold the Suzuki franchise in Southern Pines if certain terms and time tables were met.

In April 2005, Leith's initial plans were criticized by the Town as being inconsistent with downtown Southern Pines. Leith submitted revised plans in June 2005, which were received with favorable comments. Before the next town council meeting, however, a large number of citizens began to protest the proposed automobile park. Groups of citizens requested: (1) that the Property be rezoned as Office Services ("OS"), which does not allow for automobile dealerships

under any circumstances; (2) that the Town's Unified Development Ordinance ("UDO") be amended to prohibit Leith's intended use and to reduce the allowable impervious surfaces for development from sixty-five to forty percent; and (3) that the Town "take the property by eminent domain and use the land to build a park that can be used by citizens."

On October 11, 2005, the town council voted unanimously to rezone the Property to OS. As a result, Leith was prohibited from developing and operating an automobile dealership on the Property, lost the Suzuki letter of intent, and incurred substantial monetary loss.

II.

Leith filed a Complaint on December 9, 2005, claiming that it had acquired vested rights in the Property and that the rezoning decision at issue violated their federal and state substantive due process rights. [Doc. # 1.] Leith also raised state law tort claims for tortious interference with contract and tortious interference with prospective economic advantage. (Id.) Following discovery, Leith moved for partial summary judgment [Doc. # 40] and to strike various affidavits and transcripts of town council meetings [Doc. ## 59, 64], the Town moved for summary judgment [Doc. # 47] and for an extension of time to file a supplemental motion for summary judgment on the tortious interference with prospective economic advantage claim [Doc. # 66], and the individual members of the town council moved for summary judgment [Doc. # 45].

On May 15, 2007, the United States Magistrate Judge recommended that the Town's Motion for Summary Judgment be granted with respect to the substantive due process claims and that the Court not exercise supplemental jurisdiction over the remaining state law claims. It was further recommended that Leith's Motion for Partial Summary Judgment and Motions to Strike be denied, that the Town's Motion for Extension of Time to File Supplemental Motion for Summary Judgment on Tortious Interference with Prospective Economic Advantage Claim be denied as moot, and that no action be taken on the individual town council members' Motion for Summary Judgment. [Doc. # 74.] Leith filed objections to the Recommendation on June 4, 2007. [Doc. # 77.]

On June 19, 2007, before the Town's deadline to respond to Leith's objections, a Memorandum Order was entered <u>sua sponte</u> staying this action pending the resolution of state law issues – such as whether Leith acquired vested rights to develop the Property and whether the Town violated North Carolina law by changing the zoning of the Property – by the North Carolina state courts pursuant to <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315, 63 S. Ct. 1098 (1943). The Town filed the instant motion on June 21, 2007.

III.

The Town has moved to vacate the stay order pursuant to Rules 60(b)(1) and 60(b)(6) of the Federal Rules of Civil Procedure, which authorize relief from final orders for "mistake, inadvertence, surprise, or excusable neglect" and for "any

4

other reason justifying relief," respectively. Fed. R. Civ. P. 60(b)(1), (6). The catch-all provision of Rule 60(b)(6) "provides the court with 'a grand reservoir of equitable power to do justice in a particular case' and 'vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice' where relief might not be available under any other clause in 60(b)." Eberhardt v. Integrated Design & Constr., Inc., 167 F.3d 861, 872 (4th Cir. 1999) (quoting Compton v. Alton Steamship Co., 608 F.2d 96, 106-07 (4th Cir. 1979)). Generally, relief under Rule 60(b)(6) is available only upon a showing of "extraordinary circumstances." Reid v. Angelone, 369 F.3d 363, 370 (4th Cir. 2004).

To prevail in a motion seeking relief under 60(b), a movant must first show that three "threshold conditions" have been met. Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 264 (4th Cir. 1993). The movant must show: (1) that the motion is timely; (2) that there is a meritorious defense to the action; and (3) that the opposing party would not be unfairly prejudiced by having the order set aside. Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 896 (4th Cir.1987). If all three threshold conditions are met, the court must determine whether the movant has established one of the six grounds for relief in 60(b)(1)-(6). Werner v. Carbo, 731 F.2d 204, 207 (4th Cir. 1984). As noted above, the relevant provisions in this case are Rules 60(b)(1) and 60(b)(6). If the movant satisfies both the threshold conditions and establishes a ground for relief, the "court must balance the

5

competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine, within its discretion, whether relief is appropriate in each case." Square Constr. Co. v. Washington Metro. Area Transit Auth., 657 F.2d 68, 71 (4th Cir.1981). Leith does not challenge whether the Town has fulfilled these conditions. Therefore, for purposes of addressing the instant motion, it will be assumed that each of the threshold conditions has been satisfied.

A.

The Town first contends that relief is warranted under Rule 60(b)(1) because of a mistake in the Clerk's docketing system. It was noted in the June 19 Memorandum Order that "the Town did not respond" to Leith's objections to the Recommendation of United States Magistrate Judge. The stay order was in fact filed before the response deadline elapsed. The Town argues that the order "resulted from the fact that the Court lacked the benefit of [their] Response," which "would have clearly illustrated both" their entitlement to summary judgment and the impropriety of abstention. The abstention issue, however, was raised by the Court sua sponte. As such, the misstatement in the order is inconsequential and offers no basis for relief under Rule 60(b)(1). Moreover, the Court has reviewed the proposed Response and, as discussed in more detail below, the Response does not alter the determination reached in the June 19 Memorandum Order.

B.

The Town next argues that it is unnecessary to have a state court determine whether Plaintiffs acquired vested rights because "under no scenario will Plaintiffs be deprived of a vested right to proceed with construction despite the enactment of the rezoning ordinance." [Doc. # 84 at 14]. Specifically, the Town asserts first that if the state court were to decide that Plaintiffs did not acquire vested rights, then Plaintiffs would not be allowed to assert a claim for damages under §1983. In addition, the Town asserts that even if the state court were to decide that Plaintiffs acquired vested rights, then Plaintiffs would be allowed to proceed with construction of the auto park despite the rezoning and would have no valid claim for § 1983 damages. Thus, the Town concludes, "No scenario exists in which Plaintiffs will be deprived of the property right they are seeking in this case: the right to proceed with construction despite the amended zoning ordinance." [Doc. # 84 at 17].

The Town bases its argument that equitable relief would cure any substantive due process violation on <u>Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach</u>, 420 F.3d 322 (4th Cir. 2005), in which the Fourth Circuit held that developer plaintiffs could not state a due process claim because "plaintiffs received the very remedy they sought, the permit to develop the property." <u>Id.</u> at 328. The court further noted that "[c]osts incurred securing a permit are part of the process, and we have never held then to be compensable." <u>Id.</u> The Town concludes that if

7

a plaintiff receives the right to proceed with construction despite the zoning change, then the plaintiff would not be deprived of a property right and thus would not be entitled to any damages pursuant to § 1983.

However, the Town's argument is flawed for two reasons. First, the Town appears to read Sunrise as prohibiting both a procedural due process claim and a substantive due process claim so long as the plaintiff has the opportunity to receive adequate review of the initial zoning decision. Although the Town may be correct in its assertion that a state court reversal of the initial zoning decision would eliminate the procedural due process claim, such a reversal would not necessarily resolve the substantive due process rights question. Second, in the event Leith is successful in establishing a violation of its substantive due process rights, Leith's damages would not necessarily be limited solely to the costs incurred in receiving a decision that would allow construction of the auto park to proceed.

1.

To establish a violation of federal substantive due process, Leith must "demonstrate (1) that they had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 827 (4th Cir. 1995). While it will certainly be difficult for a zoning

8

plaintiff to state a claim for a substantive due process violation pursuant to § 1983 in the event the plaintiff receives adequate procedural due process, it does not appear that Fourth Circuit precedent would prevent the Court from conducting a substantive due process analysis or from granting relief on a substantive due process claim.

For example, in Sylvia Development Corp., the Court noted the difficulty faced by a plaintiff attempting to establish a substantive due process violation in light of adequate state process to review the zoning decision but nonetheless considered whether the state's actions fell "so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." Id. In addition, in Marks v. City of Chesapeake, 883 F.2d 308, (4th 1989), the Court affirmed the district court's determination that despite review of the zoning decision in the state courts, the "City Council *had* acted arbitrarily by denying" the permit at issue. Id. at 310. Thus, notwithstanding the Town's assertion to the contrary, it is conceivable that a plaintiff could prevail on both a vested rights claim, thereby receiving permission to proceed with the proposed construction, and on a substantive due process claim for arbitrary and capricious conduct associated with the initial deprivation of that vested right.

2.

As to the second flaw in the Town's argument, in the event Leith is able to establish a violation of its substantive due process rights, then Leith's damages

9

would not be limited to the costs incurred in obtaining permission to develop the property. See Siegmond v. Fedor, No. 3:CV-01-2266, 2004 WL 1490430, at *5 (M.D. Pa. June 29, 2004) ("In substantive due process cases, damages may properly be measured by the value of the loss of use of property."). The United States Supreme Count has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution." Memphis Cmty. School Dist. v. Stachura, 477 U.S. 299, 305-06, 106 S. Ct. 2537, 2542 (1986) (internal citation omitted)); Farrar v. Hobby, 506 U.S. 103, 112, 113 S. Ct. 566, 573 (1992) ("Doubtless the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights.") (internal citation omitted).

In this case, in addition to injunctive and declaratory relief, Leith seeks "actual damages in an amount . . . believed to be in excess of Ten Million Dollars ($10,000,000), plus interest and costs, fees and attorneys' fees as allowed by law. (Doc. # 1, Compl. at 28, ¶ 4.) Leith asserts that from the date that it received the initial zoning compliance letter from the Town in 2001 until the 2005 rezoning of the Property, it spent a total of $2,072,060 towards development of the automobile park.[1] It is, therefore, evident that Leith seeks damages beyond

---

[1] The $2,072,060 is broken down as follows: $1,553,904 to purchase the Property; $24,765 for regulatory compliance and engineering services; $14,122 for architectural services; $20,507 for legal services; $33,546 for appraisal, survey,

10

the "[c]osts incurred securing a permit." See Sunrise, 420 F.3d at 328. Prohibiting the use of the Property as an automobile park arguably caused measurable damages to Leith in the form of lost profits. Therefore, simply allowing the automobile park venture to proceed would not wholly satisfy Leith's due process claim.

IV.

Finally, the Town asserts that *Burford* abstention is improper because this case "presents no difficult issues of state law, and an adjudication by this Court would not disrupt a coherent policy." [Doc. # 86 at 3]. However, as stated in the June 19 Memorandum Order, this case "involves the interpretation of state land use and zoning laws" and "is more appropriately heard in state court." [Doc. 81 # at 6]; see Marks, 883 F.2d at 310 (noting that "the district court issued a sua sponte order temporarily abstaining from the decision of any federal claims pending [the plaintiff's] exhaustion of any available state court remedies").

V.

For the reasons stated above and for the reasons stated in the June 19 Memorandum Order, it is determined that abstention in this matter is appropriate and that the Town's Verified Motion for Relief from Order Staying Case [Doc. #

---

geotechnical and environmental assessment, and construction management services; $124,747 for the time and effort spent by Leith officers and employees; $52,029 for property taxes; $235,686 in interest on the loans that financed the purchase of the Property; and $12,754 for the cost of money on cash outlay to develop and maintain the Property.

11

83] should be DENIED.

This the day of September 14, 2007

                                      /s/ N. Carlton Tilley, Jr.
                                      United States District Judge